IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROBERTA MAY, :

        Plaintiff, :

v. : CIVIL ACTION NO.: 09-00625-WS-C

MOBILE COUNTY PUBLIC SCHOOL, :
SYSTEM, et al.,
                                                 :
        Defendants.

## REPORT AND RECOMMENDATION

This federal question action was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), and is before the Court on the motions to dismiss filed by Defendants, Board of School Commissioners of Mobile County, Alabama ("the School Board") (improperly designated as Mobile County Public School System and/or Mobile County Public School System's School Board); Dr. Roy Nichols, Superintendent of the Mobile County Public School System; and Mary Wood, Principal of Causey Middle School, filed on December 23, 2009, and January 29, 2010.[1] (Docs. 4, 10, Motions to Dismiss). After consideration of the pleadings, and for the reasons set out below, it is recommended that Defendants' motions to dismiss be granted (Docs. 4, 10), that Plaintiff's federal law claims (Counts 1-3 of the complaint) be dismissed with prejudice, and that Plaintiff's state law claims (Counts 4-6 of the complaint) be dismissed without prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

---

[1] Plaintiff has also sued Dr. Erica King, the IEP team leader at Causey Middle School. (Doc. 1 at 2, Complaint). It appears, however, that Defendant King has not been served.

1. On September 28, 2009, Plaintiff, a special education teacher at Causey Middle School ("Causey") in Mobile, Alabama, filed this action against Defendants pursuant to 42 U.S.C. § 1983 alleging a violation of her substantive due process rights under the Fourteenth Amendment as a result of Defendants' failure to protect her from a physical assault by a special education student. (Doc. 1, Complaint, Counts 1, 2, and 3).[2]

2. Plaintiff also alleges state law claims against Defendants for negligence, wantonness, and negligent intentional infliction of emotional distress arising out of the physical assault by the student. (Doc. 1, Counts 4, 5, and 6).

3. In her complaint, Plaintiff alleges that the School Board hired her in August, 2007, on an emergency teaching certificate to serve as a special education teacher at Causey. (Doc. 1 at 2).

4. One year earlier, in the Fall of 2006, the minor student about whom Plaintiff complains had enrolled as a sixth grader at Causey. (Id.).

5. Plaintiff alleges that the student suffered from mental disabilities and a propensity for violence evidenced by repeated acts of "willful disobedience, physical violence, poking and thumping teachers, and blowing nose mucous on teachers and other students." (Id. at 2-3).

6. At least seven such incidents were reported and documented, but Defendants did not

---

[2] In Count 3 of her complaint, Plaintiff alleges a claim against the School Board under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978), for violation of her substantive due process rights as a result of the Board's policies and practices. (Doc. 1 at 6). In Monell, the Supreme Court held that a local government entity can be held liable under § 1983, but only if the government entity's policy or custom was the "moving force" behind the alleged constitutional violation. Id. Having found herein that Plaintiff's allegations do not establish a constitutional violation, Plaintiff's Monell claim against the School Board is foreclosed.

remove the student from the school. (Id.).

7. Plaintiff was assigned as the student's case manager for the 2007-2008 school year and regularly reported the student's "inappropriate behavior"[3] to her superiors, including Defendant Superintendent Nichols, Defendant Principal Wood, and Defendant IEP team leader King. (Id. at 3).

8. On September 26, 2007, the date of the incident giving rise to Plaintiff's complaint, the student became violent in the principal's office. (Id. at 4).

9. When Plaintiff and Principal Wood escorted the student to the first aide room "to allow him to lie on a cot and cuddle in a blanket (a 'calm down' method)," the student became extremely violent with Plaintiff and began "hitting and kicking her in the head and bit her." (Id.).

10. The student then attempted to tackle the principal, and, when Plaintiff tried to stop him, he knocked Plaintiff to the floor, causing her to land on her knees and elbows, suffering "bruises, contusions, multiple surgeries, infections, lost wages, loss of future income, emotional distress, pain and suffering, and other injuries...."[4] (Id. at 4-5).

11. Plaintiff claims that Defendants' failure to remove the student from the school, failure to train her to handle the student, or otherwise protect her from the student "despite incident after

---

[3] This behavior included "blatant disrespect for teachers, cursing at teachers, running from teachers, yelling at teachers, threatening to hit teachers, hitting teachers, shoving teachers, and refusing to listen to teachers." (Doc. 1 at 3).

[4] In her response to Defendants' motion to dismiss, Plaintiff states that she "received injuries to her head, face, and elbow and sustained severe injuries to her knee after falling directly on it during the altercation." (Doc. 7 at 2).

incident of the Student physically and verbally attacking students and teachers" constituted deliberate indifference to her safety and violated her substantive due process rights under the Fourteenth Amendment, as well as her rights under state tort law. (Doc. 1 at 5-9).

    12. On December 23, 2009, and January 29, 2010, Defendants, the School Board, Superintendent Nichols, and Principal Wood, filed motions to dismiss under <u>Federal Rule of Civil Procedure</u> 12(b)(6), arguing that: (1) Plaintiff's federal law claims (Counts 1, 2, and 3) are due to be dismissed (a) on the basis of qualified immunity,[5] and (b) because Defendants'

---

[5]     It is unclear from the Complaint whether Plaintiff is suing Defendants in their official or individual capacities or both. To the extent that Plaintiff is suing the individual Defendants in their official capacities, such claims are redundant of the claims against the Board and due to be dismissed. See <u>Busby v. City of Orlando</u>, 931 F.2d 764, 776 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly. . . ."). "Accordingly, in a suit against both an entity and the entity's officer in his official capacity, the named individual defendant in his official capacity should be dismissed as redundant." <u>Stephens v. Georgia Dep't of Transp.</u>, 2009 WL 3747167, *2 (M.D. Ga. 2009).

    To the extent that Plaintiff is suing Defendants in their individual capacities, "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, __ U.S. __, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). Prior to the <u>Pearson</u> decision, the Court followed the mandatory procedure of <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001), *overruled in part by Pearson,* which required the Court to determine whether the plaintiff's allegations, if true, established a constitutional violation and, if the first step was satisfied, to determine whether the right at issue was clearly established at the time of the alleged misconduct. Although that procedure is now discretionary, <u>see</u> <u>Pearson</u>, <u>id.</u>, the Court nonetheless finds it beneficial in this case. Having found herein that Plaintiff's allegations do not establish a constitutional violation, the Court need not reach the second question. The Court finds that the individual Defendants are entitled to qualified immunity as to Plaintiff's federal law claims as alleged in Counts 1-3 of Plaintiff's complaint. See <u>Chavez v. Martinez</u>, 538 U.S. 760, 766 (2003) (where officer's alleged conduct did not violate a constitutional right, "the officer is entitled to qualified immunity, and we need not consider whether the asserted right was 'clearly established.'"). Although only Defendant Wood has asserted the defense of

4

conduct, as alleged by Plaintiff, cannot be characterized as arbitrary or conscience-shocking in a constitutional sense and, thus, fails to state a claim; and (2) Plaintiff's state law claims are due to be dismissed on the basis of sovereign and state agent immunity. (Docs. 4, 5, 9, 10, motions to dismiss and briefs).

13. Defendants' motions to dismiss are now before the Court.

## II. STANDARD OF REVIEW

1. "[W]hen considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged by [the plaintiff] in the complaint as true." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).

2. The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed. R. Civ. P.

3. The foregoing notwithstanding, "the court is not required to accept a plaintiff's legal conclusions." Sinaltrainal, 578 F.3d at 1260 (citing Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

4.

> A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. See Iqbal, 129 S. Ct. at 1950 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561-62, 570, 127 S. Ct. 1955, 1968-69, 1974, 167 L. Ed. 2d 929 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). . . . Factual allegations in a complaint need not be

---

qualified immunity in this case, the Court considers the defense as to the remaining individual defendants *sua sponte*.

> detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 127 S. Ct. at 1964-65 (internal citations and emphasis omitted).
>
> More recently, in Iqbal, the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. Id. The well-pled allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974.

Sinaltrainal, 578 F.3d at 1260-61.

### III. DISCUSSION

1. As discussed above, Plaintiff sues Defendants for violations of her substantive due process rights under the Fourteenth Amendment and for state law negligence, wantonness, and negligent and intentional infliction of emotional distress.

2. The Court will consider Defendants' motions to dismiss as they relate to each of Plaintiff's claims.

    A.    <u>Federal Claims (Counts 1-3)</u>.

3. In her complaint, Plaintiff, a special education teacher, alleges that Defendants violated her substantive due process rights under the Fourteenth Amendment by failing to protect her from an attack by one of her special education students at Causey Middle School on September 26, 2007. (Doc. 1 at 5-7, Counts 1-3).

4. Specifically, Plaintiff alleges that Defendants "turned a blind eye" to the danger that

6

the mentally disabled and physically aggressive student presented and that Defendants were deliberately indifferent to her safety by failing to remove the student from the school and failing to train her on the proper handling of students with behavioral disorders.[6] (Doc. 1 at 1-6).

5. As discussed above, Plaintiff alleges that Defendants were "well aware of the Student's mental disabilities" and "propensity for violence," as evidenced by at least seven documented incidents involving acts of willful disobedience and physical violence such as poking, pushing, cursing, yelling, running, hitting, shoving, threatening, and refusing to listen to teachers. (Doc. 1 at 2-5).

6. As a result of Defendants' deliberate indifference to her health and safety, the student was able to attack Plaintiff, hitting her, kicking her in the head, biting her, and knocking her to the floor. (Doc. 1 at 4).

7. Plaintiff alleges that Defendants' deliberate indifference shocks the conscience and constitutes a violation of her substantive due process rights under the Fourteenth Amendment. (Doc. 1 at 5).

8. The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

9. However, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 195 (1989).

---

6 In her response to Defendants' motion to dismiss, Plaintiff also states that Defendants "failed to properly evaluate and update the student's Individualized Education Plan ("IEP")...." (Doc. 7 at

> The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. . . . Its purpose was to protect the people from the State, not to ensure that the State protected them from each other.

Id. at 195-96.

10. The Supreme Court in DeShaney did recognize an exception to the general rule that the State has no duty to protect its citizens from harm by third parties where a "special relationship" exists between an individual and the State, such as where the State takes a person into its custody and holds him against his will as in the case of incarcerated prisoners or involuntarily committed mental patients. Id. at 198-99.

11. In such cases, the protections of the Due Process Clause will be triggered. Id.

12. Plaintiff's allegations in this case, however, are insufficient to implicate substantive due process protections.

13. In Collins v. City of Harker Heights, 503 U.S. 115 (1992), the Supreme Court rejected the notion that government employers have a federal constitutional obligation to provide its employees with certain minimal levels of safety and security in the workplace, holding that voluntary employment relationships are different from the custodial relationships discussed in DeShaney. See Collins, 503 U.S. at 127-28.

14. Following Collins, the Eleventh Circuit recognized in White v. Lemacks, 183 F.3d 1253 (11th Cir. 1999), that, "[w]here non-custodial relationships are involved, the government

---

3).

can be held liable under the substantive due process clause only where an official's act or omission is 'arbitrary[ ] or conscience shocking.'" Id. at 1257 (quoting Collins, 503 U.S. at 128).

    15. The court stated:

> Collins makes it clear that the fact a government employee would risk losing her job if she did not submit to unsafe job conditions does not convert a voluntary employment relationship into a custodial relationship, and therefore does not entitle the employee to constitutional protection from workplace hazards, one of which can be harm caused by third parties. As the Court put it, the Due Process Clause does not guarantee government employees "a workplace that is free of unreasonable risks of harm." Collins, 503 U.S. at 129, 112 S. Ct. at 1070.

White, 183 F.3d at 1257.

    16. Similarly, in the present case, the Court rejects Plaintiff's assertion that, while she admittedly "was a *voluntary* employee of Defendants, her position as [a] special education case worker was akin to a person in custody" because she was required to follow the IEP for this student which required her to wrap the minor student in a blanket when he exhibited behavioral problems (referred to as a "wrapping session"). (Doc. 7 at 4) (emphasis added).

    17. Plaintiff reasons that, because an IEP is mandated by the Individuals with Disabilities Act, she had no choice but to follow it even if it placed her in danger. Therefore, her voluntary employment relationship was converted into one akin to a person in custody.

    18. Plaintiff's argument, however, ignores Collins and White.

    19. As quoted above, "Collins makes it clear that the fact a government employee would risk losing her job if she did not submit to unsafe job conditions does not convert a voluntary employment relationship into a custodial relationship, and therefore does not entitle the

employee to constitutional protection from workplace hazards, one of which can be harm caused by third parties." White, 183 F.3d at 1257.

20. Thus, Plaintiff's argument that she was in a custodial relationship with the State is unavailing. In order to state a claim for a violation of her substantive due process rights, Plaintiff must allege conduct by Defendants that can be characterized as arbitrary or conscious shocking in a constitutional sense.

21. In deciding what type of conduct shocks the conscience so as to implicate the Fourteenth Amendment, the Court is mindful of the Supreme Court's admonition against expanding the concept of substantive due process. See Collins, 503 U.S. at 125 ("As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended.").

22. While "the measure of what is conscience-shocking is no calibrated yard stick. . . [w]e know for certain . . . that a showing of negligence is insufficient to make out a constitutional due process claim." Waddell v. Hendry County Sheriff's Office, 329 F.3d 1300, 1305 (11th Cir. 2003) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)).

23. Indeed, "even intentional wrongs seldom violate the Due Process Clause." Id. at 1305 ("even conduct by a government actor that would amount to an intentional tort under state law will rise to the level of a substantive due process violation only if it also 'shocks the conscience.'") (citations omitted).

24. In this case, Plaintiff alleges "deliberate indifference" to her safety on the part of

Defendants that constituted a violation of her right to substantive due process.[7] (Doc. 1 at 4, 6).

25. In order to establish a substantive due process violation on the basis of deliberate indifference in a non-custodial setting, a plaintiff would have to show "deliberate indifference to *an extremely great risk of serious injury* to someone in the plaintiff's position." Waddell, 329 F.3d at 1306 (emphasis added).

26. Accepting all of Plaintiff's allegations in her complaint as true, including the facts that: (1) she, a special education teacher, was attacked by a middle school special education student who hit her, kicked her, bit her, and threw her to the floor, causing injury to her head, face, elbow, and knee, and (2) Defendants knew of the student's violent propensities and allowed the student to remain at the school without training Plaintiff on how to handle the student or otherwise protecting Plaintiff from the student, those allegations do not establish "deliberate indifference to an extremely great risk of serious injury," nor do they otherwise rise to the level of arbitrary or conscious shocking in the constitutional sense. Cf. DeShaney, 489 U.S. at 202-03 (the State's failure to protect a four-year-old child from grievous physical abuse by his father, despite knowledge of the danger that the child faced, did not violate substantive due process where the State was not in a custodial relationship with the child); Collins, 503 U.S. at 128 (City's deliberate indifference to its employee's workplace safety, evidenced by a custom of failing to train or warn employees of known dangers, which resulted in employee's death, did not

---

7 In relation to her federal law claims (Doc. 1, Counts 1-3), Plaintiff does not allege that Defendants *intentionally* violated her constitutional rights, although she does allege intentional, wanton, and reckless conduct in relation to her state law claims. (Counts 4-6). For the reasons set forth herein, even if Plaintiff's complaint could be read to assert an intentional violation of her constitutional rights, the facts alleged in Plaintiff's complaint still do not rise to the level of arbitrary or conscience shocking in the constitutional sense. See Waddell, 329 F.3d at 1305.

shock the conscience in a constitutional sense so as to state a claim for violation of substantive due process under the Fourteenth Amendment); Griffin v. Troy State University, 128 Fed. Appx. 739, 740 (11th Cir. 2005) (unpublished)[8] (defendants' failure to provide for the security, safety, and protection of a seventeen-year-old college student who was murdered in her on-campus dormitory, where she was required by defendants to live, did not state a claim for violation of substantive due process under the Fourteenth Amendment where the student did not have a custodial relationship with defendants and where the defendants' conduct did not rise to the level of arbitrary or conscious-shocking in the constitutional sense); White, 183 F.3d at 1254 (plaintiffs, who were employed as nurses at a jail where they were attacked and brutally beaten by an inmate, failed to state a claim for violation of their substantive due process rights where plaintiffs were in a consensual employment relationship with defendants, and defendants' deliberate indifference to plaintiffs' workplace safety did not rise to the level of arbitrary or conscience shocking in a constitutional sense).

27. While the Court naturally sympathizes with Plaintiff for the injury that she has suffered, the right alleged to have been violated -- a constitutional right to protection by the State from injury by a third party -- simply does not exist in this case. See DeShaney, 489 U.S. at 197 ("As a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.").

28. Accordingly, Plaintiff's Fourteenth Amendment substantive due process claims

---

[8] "Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC, 253 Fed. Appx. 861, 865 n.5 (11th Cir. 2007) (unpublished).

(Counts 1-3) are due to be dismissed.[9]

        B.       <u>State Law Claims (Counts 4-6)</u>.

29. The basis for the exercise of the Court's original jurisdiction in this case is 28 U.S.C. § 1331 based upon Plaintiff's claims under 42 U.S.C. § 1983.

30. Having determined herein that Plaintiff's federal law claims are due to be dismissed from this action, the Court now turns to whether it should exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

31. In Counts 4-6 of Plaintiff's Complaint, she asserts state law claims for negligence, wantonness, and negligent and intentional infliction of emotional distress. (Doc. 1 at 7-9).

32. Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

33. That said, a district court may decline to exercise supplemental jurisdiction over a state law claim if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).

34. In determining whether to exercise supplemental jurisdiction over pendent state law claims under § 1367(c), a court should consider the interests of judicial economy, convenience, fairness to the litigants, and comity. See <u>Palmer v. Hospital Auth. of Randolph County</u>, 22 F.3d

---

[9] In addition to the foregoing, Plaintiff's claims against Defendant Superintendent Nichols are due to be dismissed inasmuch as they are based solely on the theory of *respondeat superior.* It is well-established that "[s]upervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability." <u>Gray ex</u>

13

1559, 1569 (11th Cir. 1994) (recognizing that these factors, articulated by the Supreme Court in United Mine Workers v. Gibbs, 383 U.S. 715 (1966), are still relevant after the enactment of § 1367).

  35. "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); see also Arnold v. Tuskegee Univ., 2006 WL 3724152 at *6 (11th Cir. 2006) (unpublished) ("When the district court has dismissed all federal claims from a case, there is a strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims."); Rowe v. City of Ft. Lauderdale, 279 F.3d 1271, 1288 (11th Cir. 2002) ("Both comity and economy are served when issues of state law are resolved by state courts.").

  36. In the instant case, the Court has determined in the early stages of this litigation that Plaintiff's only federal law claims are due to be dismissed.

  37. The resolution of Plaintiff's remaining claims depends exclusively on determinations of state law.

  38. Where all of Plaintiff's federal law claims have been dismissed prior to trial, the argument for dismissing the state law claims in order to allow state courts to resolve issues of state law is even stronger. Rowe, 279 F.3d at 1288.

---

rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006).

39. "State courts, not federal courts, should be the final arbiters of state law. Baggett v. First Nat. Bank of Gainesville, 117 F.3d 1342, 1353 (11th Cir. 1997) (citing Hardy v. Birmingham Bd. of Educ., 954 F.2d 1546, 1553 (11th Cir. 1992)).

40. The discretion on whether to exercise supplemental jurisdiction is vested in the sound discretion of the district court. Rowe, 279 F.3d at 1288.

41. Considerations of comity, judicial economy, fairness, and convenience favor resolution by a state court of the remaining claims in this case.

42. Accordingly, Plaintiff's remaining state law claims (Counts 4-6) are due to be dismissed without prejudice.

CONCLUSION

43. Based on the foregoing, it is recommended that Defendants' motions to dismiss Plaintiff's complaint be granted, that Plaintiff's federal law claims (Counts 1-3 of the complaint) be dismissed with prejudice, and that Plaintiff's state law claims (Counts 4-6 of the complaint) be dismissed without prejudice.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 13th day of July, 2010.

                                      s/WILLIAM E. CASSADY
                                      **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. **Objection**. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

   A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[10] after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

   A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. **Transcript (applicable Where Proceedings Tape Recorded)**. Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

10 Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed. R. Civ. P. 72(b)(2).